Wendy Musell (State Bar No. 203507)
LAW OFFICES OF WENDY MUSELL
180 Grand Ave. Suite 1300
Oakland, CA 94612
Telephone: (510) 270-2252
Facsimile: (510) 228-1391
wmusell@wendymuselllaw.com

Toni Jaramilla (State Bar No. 174625)
TONI JARAMILLA, A PROFESSIONAL LAW CORP.
1900 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Telephone: (310) 551-3020
Facsimile: (310) 551-3019
toni@tjjlaw.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDIA ESCOTO, <br><br> Plaintiff, <br><br> vs. <br><br> MERRICK GARLAND, Attorney General of the United States, UNITED STATES DEPARTMENT OF JUSTICE, Does 1-10, <br><br> Defendants. | Case No. <br><br> **PLAINTIFF'S COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF** <br><br> 1. Discrimination – Title VII (42 U.S.C. § 2000e, et seq.); <br> 2. Harassment – Title VII (42 U.S.C. § 2000e, et seq.); <br> 3. Discrimination – Rehabilitation Act (29 U.S.C. § 791, *et seq.*) <br> 4. Retaliation – Title VII 42 U.S.C. § 2000e, et seq.); <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff CLAUDIA ESCOTO alleges as follows:

## INTRODUCTION

1. Plaintiff CLAUDIA ESCOTO, while working as a Staff Assistant to Assistant Chief Immigration Judge Scott Laurent was subjected to egregious and continual sexual harassment, including Judge Laurent describing in graphic detail other judges and employees he wanted to have sex with, or had sex with, in what positions he wished to have sex and in what manner. Judge Scott Laurent discussed in lurid detail the physical attributes of attorneys who came before him to represent litigants and the government and further discussed attraction to and/or sexual relations with other judges. Judge Laurent regularly subjected Plaintiff to rambling diatribes regarding the breasts, attractiveness and whether he deemed the female attorneys and judges "fuckable." Judge Laurent also regularly discussed female colleagues and employees in a degrading and sexual manner, discussing in graphic detail who he wanted to have sex with, the physical attributes of female employees and judges. Judge Laurent engaged in this conduct even when in judge's robes when on the bench. Judge Laurent subjected Plaintiff to graphic description of sexual relations he was having with his wife and other women, including during what was supposed to be work hours.

2. Judge Laurent touched Plaintiff without her consent in a sexual manner, repeatedly placing his hand on Plaintiff's upper leg when she traveled in a car with him, and ensuring his right arm touched her breasts. This was unwelcome and deeply disturbing to Plaintiff.

3. Judge Laurent further demeaned Plaintiff's sexual orientation, claiming he could turn her straight (referring to his supposed sexual prowess if Plaintiff had sexual relations with him), referred to Plaintiff's wife's breasts and attractiveness and demanded that Plaintiff come "sit on Daddy's lap," referring to himself as "Daddy." He would also proclaim "I can turn you straight, Baby!"

4. Judge Laurent's conduct caused Plaintiff severe emotional impacts, including causing fainting spells, among other severe reactions. Plaintiff requested a medical leave, during which time

Judge Laurent continued to contact Plaintiff to pressure her to work. He denied Plaintiff's extension of leave, improperly placing her on AWOL status, even though Plaintiff had leave time. Plaintiff requested a reasonable accommodation of reassignment to a different supervisor where she would not be subjected to this egregious sexual harassment. This request was denied by Defendant. Defendant then acted on Judge Laurent's recommendation to fire Plaintiff shortly after receiving Plaintiff's complaints of sexual harassment, discrimination, and retaliation, having taken no actions to address Plaintiff's complaints, other than to fire her.

5. Judge Laurent's actions show no respect for the sacred office he holds, demean the entire justice system, and turn what should be a model employment environment into a cesspool, where Plaintiff was made to endure an onslaught of sexual comments and sexual advances, ultimately being fired when she had the bravery to come forward. Plaintiff CLAUDIA ESCOTO, as well as the justice system itself, deserved so much better.  Defendant must be held to account.

## JURISDICTION AND VENUE

6. This court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1331, 1343(a)(4). This action arises under federal law: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. and the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq*., as amended by the Americans With Disabilities Act and the Americans With Disabilities Amendments Act.

7. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(e), because the unlawful practices alleged in this complaint occurred in the Central District of California.

## PARTIES

8. Plaintiff CLAUDIA ESCOTO is, and at all relevant times was, a resident of the Central District of California.  She is a woman, a lesbian and a person with disabilities.  She was employed as a Staff Assistant to Assistant Chief Immigration Judge Scott Laurent by the Department of Justice, Executive Office for Immigration Review (EOIR), Office of the Chief Immigration Judge, Van Nuys Immigration Court in Van Nuys, California.

PLAINTIFF'S COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL

9. Defendant MERRICK GARLAND is the UNITED STATES ATTORNEY GENERAL, the head of the U.S. DEPARTMENT OF JUSTICE, an executive agency within the meaning of the Civil Service Reform Act, 5 U.S.C. §1065 and is the head of the relevant executive agency. As such, Defendant is responsible for administration of all programs within the agency, including the employment policies and practices of the U.S. DEPARTMENT OF JUSTICE in all regions and is in a position to create and implement a policy to eliminate and prevent any form of discrimination and retaliation and to provide complete relief for Plaintiff. Accordingly, MERRICK GARLAND is named as defendant in this action pursuant to 28 U.S.C. §2000e-16(c). Defendant is sued in his official capacity only.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. Plaintiff Claudia Escoto filed an informal EEO complaint, followed by timely filing a formal EEO complaint that was accepted and deemed timely by Defendant. Plaintiff requested a Final Agency Decision on October 18, 2022. Plaintiff has been informed by the United States Department of Justice Complaint Adjudication Office that there is an extensive backlog and there is no estimated date that she can be provided for the issuance of a Final Agency Decision. The Agency has not yet issued any Final Agency Decision.

11. More than 180 days have passed since Plaintiff Claudia Escoto filed her EEO complaints and no Final Agency Decision has been issued.

12. Plaintiff has fully exhausted her administrative remedies and is entitled to file in the district court and is timely filing this Complaint.

13. Plaintiff's EEO complaints are also subject to equitable tolling, as Defendant should not benefit from its own malfeasance.

## FACTS

14. Plaintiff CLAUDIA ESCOTO has been a dedicated and excellent employee of the Department of Justice, serving the Executive Office for Immigration Review (EOIR), Office of the Chief Immigration Judge, Immigration Court in Los Angeles since 2006. Prior to her unlawful

termination of employment, she was serving as a Staff Assistant for Assistant Chief Immigration Judge (ACIJ) Scott Laurent. ACIJ Laurent served as Plaintiff's supervisor.

15. While ACJI Laurent was Plaintiff's supervisor, he regularly made sexually explicit and offensive comments to Plaintiff. His comments made Plaintiff uncomfortable and were unwanted. ACIJ's conduct made it difficult for Plaintiff to perform her work. Plaintiff was also very concerned that she would lose her job if she protested and complained, given ACIJ's role as a powerful judge. Plaintiff's concerns were very well founded, as she was fired from her long-term position despite her years of excellent work after reporting Judge Laurent's conduct. Judge Laurent, on the other hand, appears to have faced no consequences for his egregious consequence and continues to enjoy the benefits of his position as a judge adjudicating matters that involve attorneys he claims to have had sex with (both private attorneys and government attorneys), and being allowed to work with and have power over other women he described wanting to have sex with in lurid detail.

16. ACIJ made comments of a sexual nature to Plaintiff on a nearly daily basis. Examples of this conduct includes, but not limited to the following detailed below: ACIJ Laurent would judge the level of attractiveness of women attorneys who appeared before him, judging which women were attractive and which were not. ACIJ Laurent would describe which attorneys for the government he was attracted to and in which manner he was attracted to them. ACJI Laurent specified which government attorneys he wanted to "fuck." ACIJ Laurent would subject Plaintiff to these comments after court was adjourned inside his courtroom.

17. ACIJ Laurent would describe the type of pornography he liked to watch. He described how he would like to "have three black men fuck [his] wife."

18. At times, after court was adjourned from video appearances, ACIJ Laurent, while on the bench, and Plaintiff was updating case files, would turn his chair to face Plaintiff.  He would name the attorneys that were in Court that day that he found attractive and/or that he wanted to have sex with. There were a few female attorneys that were his favorites. He would describe the manner by which he wanted to "fuck them" and that he wanted to "take them right there," referring to the judicial bench.

19. ACIJ Laurent subjected Plaintiff to comments about his sex life with ACIJ's wife, where he bemoaned that he was not receiving enough sex from his wife. He would also describe when he and his wife had sex, including describing if he had sex that day with his wife. He would at times state to Plaintiff that he had "gotten laid," or "my wife gave me some." He would tell Plaintiff how unhappy he was in his marriage.

20. ACIJ Laurent would also describe to Plaintiff how many times he had sex that day with his wife, and with other women, including female attorneys. He described government attorneys he had sex with, as well as private attorneys he had sex with. He described a sexual relationship he had with another female judge, prior to the judge being placed on the bench.

21. ACIJ Laurent described a sexual relationship he had with a government attorney who he claimed was obsessed with him and had been trying to contact him by using different phone numbers. ACIJ Laurent described how he had sex in the parking structure with an attorney. He bragged about having sex with three different women on one particular day, starting with sex with his wife in the morning and two different females later in the day.

22. ACIJ Laurent would provide nicknames to various women he was having sex with, or wished to have sex with, perhaps to tell them apart, such as "Hollywood Hills" and "Beverly Hills Girl." One particular private bar attorney with whom he claimed he was having a sexual relationship with, who appeared before him, was named "Hollywood Hills." ACIJ Laurent would describe when he had sex with "Hollywood Hills," whether he had seen her that day and whether he had "gotten laid."

23. At times, ACIJ Laurent would inform Plaintiff that he could make her straight, referring to his supposed sexual prowess if she had sex with him. Plaintiff is an out lesbian, and ACIJ Laurent was aware of Plaintiff's sexual orientation. ACIJ Laurent stated to Plaintiff that flirting with her "does not count" because she is a lesbian.

24. Defendant was aware of his predatory behavior, as there was a blog referring to ACIJ Laurent's preference for Asian women as "the Asian Persuasion." No action was taken regarding either ACIJ Laurent's unlawful conduct, nor the obviously racist overtones of the blog.

25. ACIJ Laurent, on more than one occasion, asked Plaintiff to "sit on Daddy's lap," referring to himself as "Daddy." He also frequently would stare at her chest, when Plaintiff was simply trying to get work done and do her job.

26. ACIJ Laurent would comment to Plaintiff about her attire, commenting on her shirts, staring at her breasts, and commenting on how many buttons she had buttoned on her shirt. ACIJ Laurent would lasciviously look Plaintiff up and down, gawking at her body. He would also ask Plaintiff if she was wearing a bra. Plaintiff tried to ignore these offensive comments and rebuffed these unwanted sexual advances.

27. ACIJ Laurent would call Plaintiff diminutive and sexist names that are inappropriate in a workplace and for a boss to call a female subordinate, including "honey," "sweet cheeks," "sweetheart," and/or "bubba."

28. Plaintiff's wife previously worked at the same courthouse as Plaintiff and ACIJ Laurent. ACIJ Laurent, while knowing Plaintiff was romantically involved with the woman who would become her wife, would comment on Plaintiff's wife's breasts and how pretty she was.

29. Judge Laurent touched Plaintiff without her consent in a sexual manner, repeatedly placing his hand on Plaintiff's upper leg when she traveled in a car with him, and ensuring his right arm touched her breasts. This was unwelcome and deeply disturbing to Plaintiff. He would also point out the house or mansion of an attorney he was having sex with, and describe how he would go to that location to have sex.

30. Judge Laurent stated to Plaintiff, regarding her appearance "you look like you lost weight, but at least your ass still looks good."

31. ACIJ Laurent required Plaintiff to perform duties that were not her job. This included job duties that were a judge's duty, such as performing background checks of other (perspective) immigration judges. This also included duties that had nothing to do with Plaintiff's job, treating her as a personal assistant such as providing translation to his housekeeper, since Plaintiff is bi-lingual, when ACIJ went on vacation, providing care for ACIJ Laurent's pets when he was on vacation, and other inappropriate tasks.

32. ACIJ Laurent's wife also contacted Plaintiff, pressuring Plaintiff to provide information to her regarding her husband's infidelities. This included ACIJ Laurent's wife discussing other sitting judges. This was also very uncomfortable and unwanted communication for Plaintiff.

33. ACIJ Laurent made sexual comments about staff members at work to Plaintiff. After a female supervisor had weight loss surgery, he would say that she was "fuckable" and that he would fuck her now that she was skinny. He would also say that he wanted to have sex with certain female legal assistants and attorney advisors and name the employees. He described liking the "big ass" of a certain attorney advisor. He described dreams he had of having sex (using explicit terms) of certain female employees, including having sex on his judicial desk and all over the office.

34. He reported to Plaintiff that he informed a female employee to wear a red nighty for her husband. He also said of the same female employee, that she "always has her tits out, I can't help but look at them."

35. ACIJ Laurent repeatedly discussed which female law clerks he was interested in having sex with, using crude sexual language, and commented about which of the female law clerks are good looking. ACIJ Laurent also described a certain Asian female law clerk and how the law clerk "freaked out" because he closed the door to his office when he and the law clerk were solely present. ACIJ Laurent did not appear to be concerned that his conduct in any manner frightened or disturbed the female law clerk.

36. In approximately November 2019, ACIJ Theresa Scala came to the North Los Angeles Court for approximately three days. Plaintiff went to lunch with Judge Scala and Judge Laurent. Judge Scala was complimentary of Plaintiff's work, and asked if Plaintiff would consider moving to Seattle because she had a staff position available there. Plaintiff told Judge Scala that she would speak to her spouse. Judge Laurent excused himself from lunch, left $20 dollars on the table, and left. That afternoon, he refused to communicate with Plaintiff, demonstrating his upset and anger that Plaintiff would consider a position with another judge. The next morning, Plaintiff was informed by Jeannette Patron, the Court Administrator, that she would not be going to the stakeholder's meeting that she was scheduled to go to, as a part of her job duties.

37. On October 26, 2019, Plaintiff lost consciousness. After receiving medical treatment, she was diagnosed with Syncope and Collapse. Plaintiff was informed by her physician that her condition was a result of her body responding to extreme stress.

38. Judge Laurent pressured Plaintiff to transfer to the Van Nuys location when the court opened in December 2019. He promised Plaintiff that if she transferred to Van Nuys and continued to work with him, he would promote and facilitate the Court Administrator position when the person who held that position retired. Plaintiff indicated that she did not want to transfer and that she wanted to wait for the supervisory position to be open that she could apply for. ACIJ Laurent then started a campaign to pressure Plaintiff to transfer to Van Nuys. He told other judges that Plaintiff didn't want to go to Van Nuys and encouraged the judges to speak to Plaintiff to make her transfer. As a result, a sitting judge emailed Plaintiff and informed her that she was making a big mistake by not going to Van Nuys. It was clear to Plaintiff that if she did not agree to transfer, her career with the Department of Justice would be adversely affected. Feeling a lack of choice, Plaintiff transferred.

39. ACIJ Laurent informed Plaintiff that he was in love with another (female) judge who was serving at the Los Angeles location. While ACIJ and the female judge did not have a sexual relationship as far as Plaintiff is aware, ACIJ Laurent repeatedly informed Plaintiff how much he wanted the other judge. ACIJ Laurent reported to Plaintiff that his wife collected transcripts of his phone calls and confronted him regarding the frequency of his contacts with the other female judge. ACIJ Laurent informed Plaintiff that he had to write a letter to the female judge letting her know that they could no longer be friends in order to appease his wife.

40. ACIJ Laurent informed Plaintiff that his wife threatened to call his boss and report his unethical conduct and expose his actions to the public. Another female judge had a conversation with ACIJ Laurent's wife to reassure her that they were not having an affair and they solely had a working relationship.

41. As a means to control Plaintiff, ACIJ Laurent would repeatedly inform Plaintiff that he got her the job, making it clear that he had ultimately power over her hiring or firing and only had her job because of him. ACIJ Laurent would tell others, including judges, that he got her the job. This was

demeaning and controlling to Plaintiff and gave her the message loud and clear that she could not cross him or risk her job.

42. The continuous and unrelenting harassment, and discrimination that Plaintiff faced by her direct supervisor caused a great toll on her health. These adverse health effects got worse and worse, with Plaintiff having severe anxiety and fainting spells, among other symptoms. On September 21, 2020, Plaintiff collapsed and experienced a loss of consciousness. On September 29, 2020, Plaintiff's condition was diagnosed as Vasovagal Syncope (Neurocardiogenic Syncope), a condition caused by severe emotional distress.

43. In October 2020, Plaintiff was diagnosed with Anxiety and Panic Disorder. Her doctor placed her on medical leave for eight weeks.

44. On October 13, 2020, Plaintiff emailed ACIJ Laurent regarding her request for eight weeks medical leave.

45. On October 15, 2020, in response, Judge Laurent informed Plaintiff her sick note was "insufficient," denied the leave and directed her to invoke FMLA.

46. On October 28, 2020, Plaintiff understandably impacted by ACIJ Laurent's e-mail, reviewed the requisite documentation with her doctor. Her doctor, concerned with Plaintiff's welfare and expected deterioration, questioned her current mental state. Plaintiff informed her doctor of additional symptoms she had recently been experiencing which resulted in her being diagnosed with Trichotillomania, an additional condition directly caused by extreme stress. In response, on October 29, 2020, the doctor provided Plaintiff with an additional letter to forward to ACIJ Laurent recommending that she be placed on temporary leave due to the seriousness of her condition. The doctor provided his medical analysis as requested by ACIJ Laurent. Plaintiff was finally granted FMLA leave on November 4, 2020.

47. In response to Plaintiff being on medical leave and not at work, ACIJ Laurent repeatedly expressed his displeasure. He repeatedly contacted Plaintiff while she was medical leave and demanded to know how soon she would come back to work. These contacts increased Plaintiff's symptoms, as even on a medical leave she could not escape ACIJ Laurent's discrimination and harassment of her.

48. When Plaintiff extended her medical leave, ACIJ Laurent increased the pressure on Plaintiff to return to work, texting her, and sending work emails requesting that she train the person who was performing her job duties while she was on leave and other work-related issues.

49. On April 4, 2021, the doctor (Psychiatrist) provided Plaintiff with an additional note requesting a further extension of two to three months minimum. Furthermore, the doctor recommended that she consider a career change or terminate her employment.

50. On April 11, 2021, Plaintiff emailed ACIJ Laurent informing him that the doctor (Psychiatrist) had extended her sick leave recommendation. Plaintiff attached the doctor's (Psychiatrist) April 4, 2021, authorization.

51. In response, on April 20, 2021 Plaintiff received an e-mail from ACIJ Laurent with the subject line reading "Notice of excessive absence and directive to provide prognosis and return to duty date." The Regional Deputy Chief Immigration Judge (RDCIJ), was also copied into this e-mail. ACIJ Laurent from the outset impressed on Ms. Escoto his authority and stature and his ability to have people in power as allies.

52. On April 20, 2021, Plaintiff received an e-mail from ACIJ Laurent placing her on Absent Without Official Leave (AWOL) after she provided him with supporting medical documentation in a timely manner. This response by Defendant substantially impacted Plaintiff's mental health, resulting in substantial regression of her health.

53. On April 29, 2021, Plaintiff's doctor (Psychiatrist), provided Plaintiff with an additional leave of absence letter, extending her provisional return-to-work date to August 16, 2021.

54. On May 5, 2021, Plaintiff's spouse sent a follow-up e-mail to ACIJ Laurent requesting she be sent details for Human Resources and the Reasonable Accommodations (RA) Department. ACIJ Laurent requested via e-mail that Plaintiff provide authorization for her wife to communicate on her behalf. The information was provided as requested. In response, on May 10, 2021, ACIJ Laurent, via e-mail provided the RA coordinator's details. ACIJ Laurent's constant back and forth and untimely delay is another example of his continued abuse of power.

55. On May 18, 2021, Plaintiff received the RA coordinator's details, then prepared and submitted her Request for Reasonable Accommodation as per DOJ Form 100A. Within her request, she outlined in detail the long-standing harassment she had endured from ACIJ Laurent, the subsequent hostile work environment created, and the retaliation created as a result of reporting such behaviors. Plaintiff outlined the severity of her medical condition.

56. Defendant responded on May 18, 2021, denying Plaintiff's request for reasonable accommodation, on the basis that "transfers to work under a different management are not valid accommodations."

57. On May 18, 2021, Plaintiff's spouse, on behalf of Plaintiff submitted a formal request for Reasonable Accommodations, further requesting any and all documentation needed to start the RA process and its regulations.

58. In response, on May 18, 2021, Plaintiff received an e-mail from EOIR's Reasonable Accommodation Program Manager informing her that her request for transfer to work under different management was not a valid accommodation, and if she wanted to request a transfer, she must contact her management (the same person who Plaintiff reported was sexually harassing her). Furthermore, the RA Program Manager stated that because Plaintiff desires to perform the same essential functions under a different manager, it does not match the goal of accommodations. No actions were taken by Defendant to address the reports of discrimination, harassment and retaliation that Plaintiff had reported.

59. On May 21, 2021, Plaintiff was issued a Notice of Proposed Removal by ACIJ Laurent.

60. On June 1, 2021, Plaintiff began a medical program in order to process her trauma and restructuring her mindset.

61. On June 4, 2021, Plaintiff provided DOJ Form 100A, a detailed letter from her psychiatrist, her medical records, and a list of changes in medications.

62. On June 8, 2021, in response to ACIJ Laurent's Notice of Proposed Removal, Plaintiff submitted a detailed explanation of her experiences of sexual harassment, hostile work environment, sex discrimination, disability discrimination and retaliation while under ACIJ Laurent's supervision.

63. On August 24, 2021, the doctor (Psychiatrist) provided Plaintiff with a letter recommending a leave extension until January 17, 2022. Furthermore, on August 26, 2021, Plaintiff's spouse emailed the RDCIJ and RA Program Coordinator, attaching the recommendation from the doctor dated August 24, 2021. Plaintiff failed to receive a response from the RDCIJ or RA Program Coordinator regarding her necessary leave extension as a form of reasonable accommodation.

64. Plaintiff made a complaint to the United States Department of Justice, Executive Office for Immigration Review Office of the Director Equal Employment Opportunity Program on December 23, 2021.

65. On January 25, 2022, Plaintiff was terminated from her employment.

66. On January 31, 2022, Plaintiff filed an additional claim of discrimination with the United States Department of Justice, Executive Office for Immigration Review Office of the Director Equal Employment Opportunity Program

67. Plaintiff made a complaint to the Office of Inspector General regarding the events described above. The Office of Inspector General declined to investigate and took no action on her complaint.

68. Plaintiff made a complaint to the United States Department of Justice, Executive Office for Immigration Review Office of the Director Equal Employment Opportunity Program on December 23, 2021.

69. On February 10, 2022, Plaintiff received a Notice of Acceptance and Amendment of Mixed Case Complaint of Discrimination, accepting her EEO complaints of discrimination, harassment and retaliation with the allegations from October 2014 to her termination of employment and also accepting the amendment to Plaintiff's complaint of termination of her Staff Assistant position.

70. Plaintiff has been subjected to ongoing continuing violations of Title VII, 42 U.S.C. §§ 2000e, et seq. *See Nat'l R.R. Passenger Ass'n v. Morgan*, 536 U.S. 101, 113 (2002); EEOC Management Directive 110 for 29 C.F.R. PART 1614 (EEO-MD-110), Chapter 5-III, Agency

Processing of Formal Complaints, available at https://www.eeoc.gov/federal-sector/management-directive/chapter-5-agencyprocessing-formal-complaints.

## FIRST CLAIM FOR RELIEF
### Discrimination on the Basis of
### Sex, Gender, Sex Stereotyping, Sexual Orientation,
### (Title VII, 42 U.S.C. §§ 2000e, et seq.)

71. Plaintiff incorporates by reference the preceding paragraphs as though fully stated here.

72. Title VII prohibits Defendant from discriminating against any employee on the basis of sex, gender, gender non-conformity, sex stereotyping, and sexual orientation.

73. In perpetrating the above-described acts and omissions, Defendant, its agents, servants, and/or employees, engaged in unlawful discrimination against Plaintiff on the basis of sex, gender, gender non-conformity, sex stereotyping, and sexual orientation, in violation of Title VII.

74. As a direct and proximate result of Defendant's unlawful acts, Plaintiff has suffered and continues to suffer lost wages, employment benefits, pension benefits and other compensation, in an amount to be proven at trial.

75. As a further proximate result of Defendant's unlawful acts, Plaintiff has suffered and continues to suffer injury, including emotional pain and suffering, and she is accordingly entitled to an award of compensatory damages.

76. Plaintiff has been subjected to ongoing continuing violations of Title VII, 42 U.S.C. §§ 2000e, et seq. *See Nat'l R.R. Passenger Ass'n v. Morgan*, 536 U.S. 101, 113 (2002); EEOC Management Directive 110 for 29 C.F.R. PART 1614 (EEO-MD-110), Chapter 5-III, Agency Processing of Formal Complaints, available at https://www.eeoc.gov/federal-sector/management-directive/chapter-5-agencyprocessing-formal-complaints.

77. Plaintiff is entitled to statutory attorneys' fees and costs, and other appropriate relief as determined by this court.

Wherefore, Plaintiff prays for relief as hereinafter provided.

## SECOND CLAIM FOR RELIEF
### Sexual Harassment & Hostile Work Environment
### Title VII, 42 U.S.C. §§ 2000e, *et seq.*

78. Plaintiff incorporates by reference the preceding paragraphs as though fully stated here.

79. At all times mentioned in this complaint, Title VII was in full force and effect and was binding on the defendant.

80. Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, which makes discrimination against employees on the basis of sex illegal.

81. Defendant violated Title VII when the harassment and discrimination targeted at Plaintiff on the basis of her sex and sexual orientation had the purpose and effect of unreasonably interfering with her work performance and created an intimidating, hostile, and offensive working environment. *See* 29 C.F.R. § 1604.11(a).

82. The harassment of Plaintiff by Judge Laurent was severe and pervasive. The workplace harassment included both of physical touching, and verbal statements of a sexual manner.

83. Plaintiff was also subjected to quid pro quo harassment conditioning Plaintiff's employment upon her submitting to Judge Laurent's sexual conduct.

84. Defendant is strictly liable for the actions of its supervisor. Further, Defendant was informed of Judge Laurent's proclivity to engage in sexually harassing and discriminatory conduct towards females yet placed Judge Laurent in a supervisory position of power where he continued to engage in discriminatory and harassing conduct.

85. As a proximate result of Defendant's discriminatory actions, Plaintiff suffered the loss of wages, salary, benefits, and additional damages in an amount to be proven at trial.

86. As a further proximate result of Defendants' unlawful actions, Plaintiff has suffered mental anguish, and emotional and physical distress, in an amount to be proven at trial.

87. Plaintiff is entitled to compensatory damages, any lost wages and benefits, injunctive and declaratory relief and attorneys' fees and costs.

### THIRD CAUSE OF ACTION

**EMPLOYMENT DISCRIMINATION BASED ON DISABILITY**
**(Rehabilitation Act of 1973, as amended)**

88. Plaintiff realleges and incorporates all prior paragraphs as though fully set forth herein.

89. Plaintiff was a qualified person with a disability under the Rehabilitation Act of 1973, as amended.

90. The U.S. Department of Justice, in violation of its legal duty under the Rehabilitation Act of 1973, as amended, discriminated in employment against Plaintiff based on her disabilities by terminating her employment based on her disability. The U.S. Department of Justice further failed in its obligation to engage in good faith in the interactive process and failed to accommodate Plaintiff's disabilities.

91. As a direct and proximate result of the U.S. Department of Justice's discriminatory actions, including but not limited to termination of Plaintiff's employment based on her disability, Plaintiff has suffered many economic, pecuniary and consequential losses, and has suffered emotional distress, pain and suffering, which has in turn caused Plaintiff to require medical, psychological and other treatment. Plaintiff has also suffered other injury including but not necessarily limited to injury to her reputation, earning capacity and employment prospects.

92. Plaintiff is entitled to statutory attorneys' fees and costs, and other appropriate relief as determined by this court.

Wherefore, Plaintiff prays for relief as hereinafter provided.

### FOURTH CLAIM FOR RELIEF
**Retaliation**
**(Title VII, 42 U.S.C. §§ 2000e, et seq., and Rehabilitation Act of 1973, as amended)**

93. Plaintiff realleges and incorporates all prior paragraphs as though fully set forth herein.

94. Plaintiff engaged in activities protected under the Civil Rights Act of 1964, as amended, and the Rehabilitation Act of 1973, as amended.

95. In violation of the Civil Rights Act of 1964, as amended, and Rehabilitation Act of

1973, as amended, Plaintiff's employment was terminated in retaliation for her protected activities.

96. Title VII and the Rehabilitation Act prohibits Defendant from retaliating against any employee because she engaged in a protected activity. Resisting and/or complaining of discrimination or harassment are protected activities under Title VII.

97. Defendant and its agents, servants, and/or employees, engaged in unlawful retaliation in violation of Title VII and the Rehabilitation Act.

98. Plaintiff engaged in protected activity.

99. Defendant, its agents, and/or employees retaliated against Plaintiff on the basis of her protected activity, and took material and adverse employment actions against her.

100. As a direct and proximate result of Defendant's unlawful acts, Plaintiff has suffered and continues to suffer lost wages, employment benefits, pension benefits and other compensation, in an amount to be proven at trial.

101. As a further proximate result of Defendant's unlawful acts, Plaintiff has suffered and continues to suffer injury, including emotional pain and suffering, and she is accordingly entitled to an award of compensatory damages.

102. Plaintiff is entitled to statutory attorneys' fees and costs, and other appropriate relief as determined by this court.

Wherefore, Plaintiff prays for relief as hereinafter provided.

## **INJUNCTIVE RELIEF**

103. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as though fully stated here.

104. Plaintiff seeks injunctive relief.

105. No previous application for injunctive relief sought herein has been made to this Court.

106. If this Court does not grant the injunctive relief sought herein, Plaintiff will be irreparably harmed.

107. No plain, adequate, or complete remedy at law is available to Plaintiff to redress the wrongs addressed herein.

PLAINTIFF'S COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL

**DECLARATORY RELIEF**

108. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as though fully stated here.

109. An actual controversy has arisen and now exists relating to the rights and duties of the parties herein in that Plaintiff contend that Defendant violated her rights not to be subjected to discrimination, harassment and retaliation. Defendant has not admitted these allegations and appears to have date certain that it will provide a Final Agency Decision. Declaratory relief is therefore necessary and appropriate.

110. Plaintiff seeks a judicial declaration of the rights and duties of the respective parties.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

1. For declaratory judgment that the practices complained of in this complaint are unlawful and violate Title VII and the Rehabilitation Act;

2. For injunctive relief;

3. For injunctive relief ordering Defendant to implement specific practices to ensure prompt investigation and resolution of EEO-related complaints and prevent retaliation against complainants;

4. For a court order requiring the U.S. Department of Justice to reinstate Plaintiff to a position where she is not subjected to discrimination, sexual harassment, and assault at the pay rate she would have reached if not for her wrongful termination, or an order requiring Defendant to pay Plaintiff front pay and benefits to a reasonable date beyond the date of the judgment in this action according to proof on all causes of action;

5. For an order requiring Defendant to remove from Plaintiff's Official Personnel File all documents referring to Plaintiff's termination or negative reference to Plaintiff's performance or conduct;

6. If Plaintiff is not reinstated by Defendant, an order requiring the U.S. Department of Justice to give job references regarding Plaintiff to any inquiring

PLAINTIFF'S COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL

employer stating that Plaintiff voluntarily resigned from her job with the U.S. Department of Justice and was performing her duties at or above a satisfactory level at the time of her resignation;

7. For compensation denied or lost to Plaintiff by reason of the unlawful acts alleged herein, in an amount to be proven at trial;

8. For payment of compensatory damages for Plaintiff's emotional pain and suffering, in an amount to be proven at trial;

9. For retirement benefits and any other benefits lost due to Plaintiff's forced retirement, including, but not limited to, her retiree health benefits;

10. For Plaintiff's attorneys' fees and costs;

11. For payment of interest at the legal rate on such damages as appropriate, including pre- and post- judgment interest;

12. Any other relief as allowed by law; and

13. For any further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of each and every cause of action so triable.

DATED: May 2, 2023

                                              By:    /S/ Wendy Musell
                                                       WENDY MUSELL
                                                       The Law Offices of Wendy Musell

                                                       /S/ TONI JARAMILLA
                                                       TONI JARAMILLA
                                                       Toni Jaramilla, A Professional Corporation

                                                       Attorneys for Plaintiff
                                                       CLAUDIA ESCOTO